**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **THOMAS DAVID YOUNG,** | : | |
| **Administrator of the Estate of THOMAS** | : | |
| **ART THREADGILL and THOMAS** | : | |
| **DAVID YOUNG, Individually,** | : | |
| **Plaintiffs** | : | **CIVIL ACTION** |
| | : | **NO.    01-5484** |
| **v.** | : | |
| | : | |
| **UNITED STATES OF AMERICA, ET AL.,** | : | |
| **Defendants** | : | |
| | | **CONSOLIDATED CASES** |
| **THOMAS DAVID YOUNG,** | : | |
| **Administrator of the Estate of THOMAS** | : | |
| **ART THREADGILL and THOMAS** | : | |
| **DAVID YOUNG, Individually,** | : | **CIVIL ACTION** |
| **Plaintiffs** | : | **NO.    02-3611** |
| | : | |
| **v.** | : | |
| | : | |
| **MANAGEMENT AND TRAINING** | : | |
| **CORPORATION,** | : | |
| **Defendant** | : | |

<u>**MEMORANDUM**</u>

**RUFE, J.**                                                          **January 7, 2003**

Before the Court is Defendant United States of America's Motion to Dismiss or In the

Alternative for a Stay.  For the reasons set forth below, Defendant's Motion to Dismiss is

granted.

**I.      FACTUAL BACKGROUND**

Plaintiff alleges the following facts in his Amended Complaint:  Thomas Art Threadgill

("Mr. Threadgill") was a Job Corps Enrollee living and working at the Potomac Job Corps

Center in Washington, D.C. (the "PJCC").   The Job Corps is a public-private partnership

administered by the U.S. Department of Labor that provides residential and educational training programs for at-risk youth, ages 16 through 24.  See Job Corps Home Page, *available at* http://jobcorps.doleta.gov/home.htm (visited Mar. 13, 2002) (printout attached as Ex. A to Plaintiff's Mem. of Law in Response to United States' Motion [doc. no. 11]).  On October 27, 1999, Mr. Threadgill sustained fatal injuries during an altercation with another Job Corps Enrollee in a bathroom at the PJCC.  Threadgill's father and estate administrator, Plaintiff Thomas David Young, instituted this action against the United States and other defendants on October 29, 2001, and amended his complaint on January 14, 2002.

Plaintiff also brought a separate action against the Government's contractor that was running the PJCC, Management and Training Corporation ("MTC"), for its involvement in Mr. Threadgill's death.  See Young v. Mgmt. and Training Corp., Civ A. No. 02-3611 (filed June 5, 2002).  The Court consolidated that case and the instant matter on December 6, 2002.[1]

Jurisdiction over Plaintiff's claims against the federal government are predicated on 28 U.S.C. § 1346(b)(1) (district courts have jurisdiction over actions against United States for money damages based on negligence by United States), and against MTC on the basis of diversity of citizenship under 28 U.S.C. § 1332.

Plaintiff brings a cause of action against the Government under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq.*  In brief, Plaintiff alleges that the Government was negligent in failing to exercise reasonable care in the maintenance of PJCC common areas, and

---

[1] This Court granted Defendants Lonnie Hall and Francesca Welch's motion to dismiss for lack of personal jurisdiction on September 17, 2002.  In addition to the United States, Defendant Management and Training Corp., Samuel Vernard Nanton, John Does #1-5 and Jane Does #1-5 remain in this action.

in failing to provide adequate security, supervision and safety at the PJCC. <u>See</u> Amended Complaint at ¶¶ 37-42. Plaintiff claims that such negligence resulted in Mr. Threadgill's death. The Government filed its Motion to Dismiss or In the Alternative for a Stay on April 1, 2002. The case was randomly reassigned to this judge's docket on July 10, 2002.

## II.    <u>STANDARD OF REVIEW</u>

The United States (the "Government") moves for dismissal under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction. Such motions may be in the form of either a factual or a facial challenge. <u>See</u> <u>Spotts v. United States</u>, No. Civ.A.02-792, 2002 WL 1197136, at *1 (E.D. Pa. May 21, 2002). Here, the Government brings a factual challenge to this Court's jurisdiction because it points to a contract between it and its independent contractor, MTC, in support of its Motion. A factual challenge allows the Court to look beyond the pleadings, and to consider evidence in order to confirm or deny the existence of jurisdiction over the matter at hand. <u>Mortensen v. First Fed. Sav. & Loan Ass'n</u>, 549 F.2d 884, 891 (3d Cir. 1977). In making this determination, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist." <u>Id.</u>; <u>see also</u> <u>Carpet Group Int'l v. Oriental Rug Imp. Ass'n, Inc.</u>, 227 F.3d 62, 69 (3d Cir. 2000) (same). This burden is light, and dismissal for lack of jurisdiction is only appropriate where the plaintiff's claim is "so insubstantial, implausible, foreclosed by prior decision of this Court, or otherwise completely devoid of merit as not to involve a federal controversy." <u>Growth Horizons, Inc. v. Delaware County</u>, 983 F.2d 1277, 1280-81 (3d Cir. 1993).

-3-

III.    **DEFENDANT'S MOTION TO DISMISS**

In its Motion, the Government argues that legal actions against the United States are barred by the doctrine of sovereign immunity.  Although the FTCA provides a limited waiver of this immunity for certain tort claims, see 28 U.S.C. § 2674, the waiver does not encompass any tort committed by employees of a Government's contractor.  See 28 U.S.C. § 2671 (the term "Federal Agency . . . does not include any contractor with the United States").  This is known as the "independent contractor exception" to the FTCA.  In this case, the Government contends that it delegated responsibility for the day-to-day operations of the PJCC to its contractor, MTC.  See Government's Memorandum of Law at 6.  Accordingly, so the argument goes, the Government is immune from suit in this case, and the Court therefore lacks jurisdiction over Plaintiff's FTCA claims against the Government.  Alternatively, the Government argues that Plaintiff's FTCA claims should be dismissed because the Plaintiff's exclusive remedy is under the Federal Employees' Compensation Act ("FECA"), 5 U.S.C. § 8101 et seq., the worker's compensation statute for federal employees injured in the performance of their duties.  As a final alternative, the Government urges the Court to stay this action pending a determination of Plaintiff's claims under FECA by the U.S. Department of Labor Employment Standards Administration's Office of Worker's Compensation Programs (the "OWCP").

In Part A below, the Court addresses Plaintiff's contention that the Government should be estopped from asserting the independent contractor exception to the Federal Tort Claims Act. In Part B, the Court addresses Plaintiff's Federal Tort Claims Act claim against the Government.

A.    **Estoppel**

In its supplemental brief, Plaintiff argues that the Government should be estopped from

asserting the independent contractor exception.  Plaintiff's Supp. Brief at 2-3.  Without citing

any case law, it first contends that representations appearing on the Government's website,

which state that the U.S. Department of Labor's "responsibilities" include "accountability" for

the Job Corps program, are a basis for estoppel.  Alternatively, it argues the Government is

estopped from asserting the independent contractor exception because it failed to raise this

defense in its response to Plaintiff's administrative claim under the FTCA.  Plaintiff, as the party

seeking the benefit of estoppel, bears the burden of establishing its applicability.  See Fredericks

v. Comm'r of Internal Revenue, 126 F.3d 433, 438 (3d Cir. 1997); Pension Benefit Guar. Corp.

v. White Consol. Indus. Inc., 72 F. Supp. 2d 547, 558 (E.D. Pa. 1999).

The Supreme Court has directed that "equitable estoppel will not lie against the

Government in the same fashion as it does against private litigants."  Office of Pers. Mgmt. v.

Richmond, 496 U.S. 414, 419 (1990).  In discussing its own consideration of the issue, it wrote:

> Our own opinions have continued to mention the possibility, in the course of
> rejecting estoppel arguments, that some type of "affirmative misconduct" might
> give rise to estoppel against the Government . . . . Courts of Appeals have taken
> our statements as an invitation to search for an appropriate case in which to apply
> estoppel against the Government, yet we have reversed every finding of estoppel
> that we have reviewed.

Id. at 421-22.  Most Circuits, including the Third Circuit, require a finding of affirmative

misconduct on the Government's part before applying estoppel against the Government.  See

Fredericks, 126 F.3d at 435; Monongahela Valley Hosp., Inc. v. Sullivan, 945 F.2d 576, 589 (3d

Cir. 1991); Davis v. United States, No. Civ.A.97-7122, 1998 WL 401640, at *2 (E.D. Pa. July 9,

1998) (compiling Third, Fifth and Ninth Circuit decisions requiring affirmative misconduct).

Accordingly, to prove estoppel against the Government, a private litigant must establish (1) a

misrepresentation (2) which he reasonably relied upon; (3) to his detriment; and (4) affirmative

misconduct on the part of the government.  See, e.g., Classic Printing, Inc. v. United States,

No.1:CV-99-2015, 2001 WL 283799, at *4 (M.D. Pa. 2001).

      The Court finds that the Plaintiff has failed to demonstrate the fourth requirement of

affirmative misconduct on the part of the Government.  This requirement is intended to protect

the "interest of citizens in some minimum standard of decency, honor, and reliability in their

dealings with their Government."  Heckler v. Cmty. Health Servs. of Crawford County, Inc., 467

U.S. 51, 61 (1984).  This is not the kind of case where courts have found that the Government

made affirmative misstatements or improperly induced a private party to incur a detriment.  See,

e.g., Cmty. Health Servs. of Crawford County v. Califano, 698 F.2d 615, 622 (3d Cir. 1983),

rev'd on other grounds sub nom., Heckler, 467 U.S. 51 (affirmative misconduct exists where

government agent's "affirmative instructions" "induced" health care provider to submit reports

in erroneous fashion, and did so "on five separate occasions spanning over two years").  Here, it

can hardly be said that it is indecent or dishonorable for the Government to make a generalized

statement about its oversight role *vis-a-vis* the Job Corps program without relinquishing the

benefits and protections of the Federal Tort Claims Act.  See United States v. Pepperman, 976

F.2d 123, 131 (3d Cir. 1992) (finding absence of the "rare and extreme circumstances necessary

to allow an estoppel claim to run against the government" when "ambiguous" letter, lacking

explicit promise of government action, led to a "misunderstanding").  The Plaintiff has not cited

any case law in support of his argument, nor has he advanced any convincing argument in

support of estoppel.

      Moreover, it would be unreasonable for Plaintiff to rely on the Government's web site in

these circumstances.  "[T]hose who deal with the Government are expected to know the law and

may not rely on the conduct of Government agents contrary to law." Heckler, 467 U.S. at 63.

Therefore, when Mr. Threadgill and the Plaintiff entered into a relationship with the

Government, it is expected that they knew that the Government retains its sovereign immunity

under the independent contractor exception to the FTCA, and cannot be held liable for the

negligence of its contractors unless it supervises day-to-day operations. Norman v. United

States, 111 F.3d 356, 357 (3d Cir. 1997); see also discussion infra at Part B. The same

Government web page that Plaintiff cites as the basis for estopping the Government's

independent contractor exception states quite clearly, "Job Corps centers are operated for the

Department of Labor by private companies through competitive contracting processes, and by

other Federal Agencies through interagency agreements." See

http://wdsc.doleta.gov/jobcorps/menupageinfo.cfm (visited Nov. 5, 2002). Given these

concurrent representations, and given the state of the law in this area, Plaintiff has failed to

demonstrate that estoppel should apply.

   Nor can the Plaintiff successfully assert estoppel against the Government on the basis of

waiver because the Fed. R. Civ. P. 12(b)(1) defense of lack of subject matter jurisdiction cannot

be waived. See Fed. R. Civ. P. 12(h)(3) ("*Whenever* it appears by suggestion of the parties or

otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the

action.") (emphasis added). See also Gould Elec., Inc. v. United States, No. Civ.A.99-1130,

2001 WL 632937, at *4 (E.D. Pa. June 7, 2001) (citing 5A Charles Alan Wright & Arthur R.

Miller, Federal Practice and Procedure § 1385 (2d ed. 1990) and noting that defense of lack of

subject matter jurisdiction is expressly preserved against waiver). Having concluded that the

Government is not estopped from asserting the independent contractor exception, the Court

-7-

moves on to consider the merits of Defendant's Motion.

### B.    Federal Torts Claim Act

United States District Courts have exclusive jurisdiction over civil actions where there is a claim against the United States for "personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the laws of the place where the act or omission occurred."  28 U.S.C. § 1346(b)(1).  Under the FTCA, an "employee of the Government" does not include "any contractor with the United States."  28 U.S.C. § 2671; Norman v. United States, 111 F.3d 356, 357 (3d Cir. 1997).  Thus, the Government retains its sovereign immunity under this independent contractor exception to the FTCA, and cannot be held liable for the negligence of its contractors.  See id.

The Government contends that when it contracted with MTC, it delegated full responsibility for the daily operations of PJCC, including its residential program.  A certified copy of the executed contract between the Government and MTC is attached to Defendant's Memorandum of Law.  See Ex. 1 to Def's Mem [hereinafter "PJCC Contract"].  Section C ("Work Plan"), subsection I ("Administration"), heading number 10 is entitled "Security and Law Enforcement."  It provides:

> The contractor shall provide for the safety and security of corps-members, staff and visitors in accordance with the PRH [Job Corps Policy and Requirements Handbook], Chapter 11 and ETH 337.  These services shall be provided on a 7-day-a-week, 24-hour-a-day basis. Security staff should be given training in Job Corps philosophy and staff hired should understand how to successfully deal with disadvantaged young people. . . . The contractor shall submit a risk assessment plan as part of the COP [Center Operating Plan] in accordance with Job Corps policy and shall maintain procedures designed to prevent the occurrence of serious incidents.

PJCC Contract at p. C-45. Additionally, the contract provides that "the contractor agrees to provide all students . . . with safety and health protection at least as effective as that which is required under the Occupational Safety and Health Act of 1970 [and federal regulations]." Id. at p. C-45 to 46 (heading no. 11(a), entitled "Safety, Occupational and Safety and Health Act"). The contract also states, "[t]he contractor will ensure there are adequate safety and security staff organized in an efficient configuration which will provide the needed internal and external security of students, staff, and facility." Id. at p. C-46 (heading no. 11(b), entitled "Safety. Internal Safety Inspection System. Safety Training Program"). The Government retained a right to inspect the PJCC to ensure compliance with the PJCC Contract's provisions. See id. at pp. C-30, E-1.

In essence, the Amended Complaint alleges that the Government, as owner and administrator of the PJCC, was responsible for the day-to-day supervision and control of Job Corps Enrollees, and that it breached a duty to prevent the kind of harm that befell Mr. Threadgill. The Government's motion rests on the argument that any negligence connected with Mr. Threadgill's death is attributable to MTC. The question before the Court, therefore, is whether the negligence alleged in the Amended Complaint could be attributable to an "employee of the government" as defined in the FTCA. See 28 U.S.C. § 2671. As outlined above, an "employee of the government" includes officers or employees of any federal agency, but excludes employees of "any contractor with the United States." Id.

"A critical element in distinguishing an agency from a contractor is the power of the Federal Government 'to control the detailed physical performance of the contractor.' " United States v. Orleans, 425 U.S. 807, 814 (1976) (quoting Logue v. United States, 412 U.S. 521, 528

(1973)).  Whether the Government possesses such power to control MTC's performance is determined by "whether [the contractor's] day-to-day operations are supervised by the Federal Government."  Id. at 815.

The contract between the Government and MTC unequivocally requires MTC to provide for the safety and security of Job Corps Enrollees at the PJCC, see PJCC Contract at C-45 to 46, and limits the Government's role to monitoring and inspecting for compliance.  See id. at C-30, E-1.  The plain terms of the PJCC Contract lead the Court to believe that MTC, not the Government, was responsible for the day-to-day operations as they pertained to issues of safety and security.  Plaintiff contends, however, that the contract lacks critical language that has been found to alleviate the Government from liability in similar cases involving the independent contractor exception.

In Norman, the contract at issue contained a provision stating, "Government direction or supervision of contractor's employees directly or indirectly, shall not be exercised."  111 F.3d at 358.  The Norman court relied on this language in finding that the independent contractor exception applied, and in affirming dismissal for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).  Plaintiff contends that because the language relied upon in Norman is missing from the PJCC Contract, the Court cannot dismiss its FTCA claim against the Government.  Plaintiff relies primarily on Dugan v. Coastal Industries, Inc., 96 F. Supp. 2d 481, 484-85 (E.D. Pa. 2000) and Spotts v. United States, No. Civ.A.02-792, 2002 WL 1197136 (E.D. Pa. May 21, 2002) in support of his argument, but the Court finds these cases distinguishable from the instant matter.

Spotts and Dugan were very similar cases.  Each involved a slip and fall allegedly caused

by an accumulation of water in a federal facility.  In both cases, the contract between the Government and its contractor granted comprehensive responsibility to the contractor for general maintenance of the facility.  The contract in each case required the contractor to perform very specific duties such as regular cleaning of the stairwell areas, see Spotts, 2002 WL 1197136, at *2; removing ice and snow; and patrolling for trash, see Dugan, 96 F. Supp. 2d at 484.  Despite this "remarkable specificity" as to the contractor's duties, the Dugan court found that the contract "nowhere delegates to [the contractor] or mentions the duty to inspect for or clean up spills, wet spots, or other hazards inside buildings."  Id.  At the same time, the contract in Dugan placed the responsibility with the government for identifying and notifying the contractor of the need for "emergency services," and to ask the contractor "to perform special cleaning duties...."  Id.  The Dugan court found that the "implication of these provisions is that the responsibility lies with the government to require the contractor to perform ad hoc duties not specifically delegated to [the contractor] in the contract, such as cleaning up spills and water accumulations."  Id.  The Spotts opinion relied on Dugan in reaching the same conclusion on nearly identical facts.[2] Spotts, 2002 WL 1197136, at *2 ("[T]he responsibility thereby lay with the government to discover any spills and to extend a service call to the contractor to ensure their removal.").   In Dugan and Spotts, the Government reserved to itself a very specific, day-to-day role in preventing the kind of harm that eventually befell the Plaintiff.  Such is not the case here.

In the instant matter, Plaintiff has failed to point to any provision in the PJCC Contract that gives the Government any specified role in the day-to-day operation of the PJCC.  To the

---

[2]  The facts of Spotts and Dugan are surprisingly similar, but the consistency of the courts' reasoning is not so surprising because the Honorable Lowell A. Reed, Jr. authored both opinions.

contrary, the most significant contract provision for purposes of this case, *i.e.*, those provisions intended to safeguard against incidents like the altercation that led to Mr. Threadgill's death, state quite specifically that the "contractor shall provide for the safety and security of corpsmembers, staff and visitors . . . .These services shall be provided on a 7-day-a-week, 24-hour-a-day basis." PJCC Contract at C-45. Furthermore, the PJCC Contract requires that the contractor provide adequate staffing and planning in order to "provide the needed internal and external security of students, staff, and facility." Id. at C-46. In other words, the PJCC Contract places responsibility for providing a round-the-clock, safe and secure environment on the contractor, not on the Government.[3]

Although the PJCC Contract does not appear to have language prohibiting Government employees from exercising supervision of its contractor, such absence does not preclude the Court from finding that the independent contractor exception applies in this case. See, e.g., Young v. Marriot Int'l, Inc., No. Civ.A.97-CV-2043, 1997 WL 700493 (E.D. Pa. Oct. 31, 1997) (dismissing for lack of subject matter jurisdiction where contract delegates cleaning duty to independent contractor). In addition, Plaintiff has produced no evidence that the Government actually did undertake such direct supervision.[4] Instead, Plaintiff attempts to impute ultimate

---

[3] The Court is mindful that Plaintiff still maintains claims against MTC for its alleged role in Mr. Threadgill's death. Today's opinion should not be read as a determination of MTC's liability. Rather, the above analysis is limited to a determination of whether the independent contractor exception applies for purposes of Plaintiff's FTCA claim against the Government.

[4] In his supplemental brief, Plaintiff argues that he should be allowed further discovery before the Court dismisses his FTCA claim. The Court disagrees. When the Defendant challenges this Court's jurisdiction, it is Plaintiff's burden to establish that jurisdiction is proper. Mortensen, 549 F.2d at 891. The Government's Motion has been pending since April 2002, and the parties have had two additional opportunities to present evidence related to the Motion. In September 2002, the Court met with counsel and requested additional memoranda addressing the

control over security at the PJCC to the Government from a contract provision requiring MTC to submit its security plan for the Government's approval.  See PJCC Contract at C-45 ("the contractor shall submit a risk assessment plan as part of the COP").  Yet, this assertion is at odds with the PJCC Contract's provisions regarding safety and security, as well as precedent interpreting the applicability of the FTCA's independent contractor provision.  The Court is not persuaded that Government approval of a security plan translates into supervision of the contractors' "day-to-day operations."  Orleans, 425 U.S. at 815 ("Thus, as in Logue and Maryland, the question here is *not* whether the community action agency receives federal money and *must comply with federal standards and regulations*, but whether its day-to-day operations are supervised by the Federal Government.") (emphasis added); see also Logue v. United States, 412 U.S. 521 (1973) (holding independent contractor exception applies where county jail must comply with Government standards and submit to Government inspections, but Government is not authorized to physically supervise jailhouse employees).

    For the foregoing reasons, this Court holds that Plaintiff has failed to meet his burden to demonstrate that this Court may exercise subject matter jurisdiction over their FTCA claim against the Government.  On the record before the Court, dismissal is appropriate because Plaintiff's claim is foreclosed by the FTCA and applicable case law.

## IV.    CONCLUSION

    For the reasons stated above, Defendant's motion to dismiss for lack of subject matter

---

independent contractor exception.  In addition, the Court subsequently permitted submission of further supplemental memoranda and evidence relating to the Government's Motion . See Court Order dated November 18, 2002 [doc. no. 18].  Plaintiff has had ample opportunity to submit evidence in support of subject matter jurisdiction.  Despite numerous opportunities, Plaintiff has failed to come forward with any evidence whatsoever to meet this "light" burden.

jurisdiction is granted.  Defendant's motion for a stay is denied as moot.  An appropriate Order

follows.